IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| DAVID K. BROADBENT, as Receiver, for MERRILL SCOTT & ASSOCIATES, LTD., et. al.,<br><br>      Plaintiff,<br><br> vs.<br><br>THOMAS SHELTON POWERS, M.D., JONEZEN ENTERPIZE, INC., a Nevada business entity, THE UNITED STATES OF AMERICA, ASSOCIATED TITLE INSURANCE AGENCY, and DOES 1-20,<br><br>      Defendants. | ORDER & MEMORANDUM DECISION<br><br><br>Civil No. 2:05 CV 375 |

  This case is a small piece of a larger puzzle involving Merrill Scott & Associates, Ltd. In the ongoing case of <u>SEC v. Merrill Scott & Assocs., Ltd.</u>, 2:02 CV 39 (D. Utah), the Securities and Exchange Commission has raised allegations of fraud in connection with a massive Ponzi scheme allegedly orchestrated by Merrill Scott[1] principals. The court appointed a Receiver, who was charged with the task of marshaling and taking control over all of Merrill Scott's funds, assets, and property. (<u>See</u> <u>id.</u>, Stipulated Order Appointing Receiver (dkt. #15).)

  The present litigation was filed to resolve a dispute over the ownership of a home in Salt Lake City, Utah. The Receiver claims that the residence is a Merrill Scott asset and should be

---

[1] While the SEC names several entities and individuals as defendants in <u>Merrill Scott & Assocs.</u>, 2:02 CV 39 (D. Utah), for the sake of convenience, the court refers to all defendants collectively as "Merrill Scott."

included in the receivership estate. But Thomas Shelton Powers, M.D., claims that he is the rightful owner of the property. Additionally, Jonezen Enterprize, Inc. claims that it has a valid encumbrance on the title that must be satisfied in full.

The court held a hearing in this matter on May 19, 2006. At the close of the hearing, the court denied a motion from the Receiver requesting that Dr. Powers be required to pay rent and for an order of contempt against Dr. Powers. (See Order Re: May 19, 2006 Hearing (dkt. #57).) The court noted that the Receiver's request for an order of contempt was denied without prejudice. (See id.) The court also indicated in its order that it would take a summary judgment motion filed by Jonezen under advisement. The court now denies that summary judgment motion.[2]

## Standard Applicable to Summary Judgment Motions

Federal Rule of Civil Procedure 56 permits the entry of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Fed. R. Civ. P. 56(c); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51 (1986); Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998). The court must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990). "The

---

[2] Jonezen styled its motion as a "cross-motion" for summary judgment. This characterization of its motion was based on its determination that the Receiver's motion for an order requiring the payment of rents and for contempt against Dr. Powers, was, in actuality, a motion for summary judgment on the merits of the parties' dispute. The Receiver opposed that characterization of its motion.

mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient [to overcome a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the plaintiff." Liberty Lobby, 477 U.S. at 252; see also Anderson v. Coors Brewing Co., 181 F.3d 1171, 1175 (10th Cir. 1999) ("A mere scintilla of evidence supporting the nonmoving party's theory does not create a genuine issue of material fact.").

"Summary judgment is a drastic remedy [and] and any relief pursuant to Fed. R. Civ. P. 56 should be awarded with care." Conaway v. Smith, 853 F.2d 789, 792 n.4 (10th Cir. 1988) (citing Jones v. Nelson, 484 F.2d 1165, 1168 (10th Cir. 1973)). "Unless the moving party can demonstrate his entitlement beyond a reasonable doubt, summary judgment must be denied." Id. (citing Norton v. Liddel, 620 F.2d 1375, 1381 (10th Cir. 1980)).

## Analysis

According to Jonezen, it was unwittingly dragged into the legal quagmire surrounding the Merrill Scott receivership when it granted a loan to Dr. Powers. Jonezen loaned Dr. Powers more than $100,000.00 in exchange for a Trust Deed on a residence located in Salt Lake City, Utah. Before granting Jonezen the Trust Deed, Dr. Powers had transferred the title to the residence from an entity called Mira Vista, LLC to himself. The Receiver argues that Mira Vista is a Merrill Scott entity and that Dr. Powers did not have the authority to transfer the title of the residence. Accordingly, the Receiver contends that Jonezen does not have a valid encumbrance on the property because Dr. Powers was not authorized to encumber the property.

Jonezen claims that its Trust Deed is valid and enforceable. In fact, Jonezen argues that is entitled to summary judgment on that point. According to Jonezen, it makes no difference whether the purported transfer of the residence from Mira Vista to Dr. Powers was valid because

Jonezen is a bona fide encumbrancer for value. Alternatively, Jonezen states that even if it does not qualify as a bona fide purchaser, Dr. Powers was authorized to transfer the title from Mira Vista to himself and, therefore, there is no defect in Jonezen's Trust Deed.

Bona Fide Purchaser

Jonezen claims that it is entitled to summary judgment because it is a bona fide purchaser protected under Utah's recording statute. Utah Code section 57-3-103 provides purchasers with protection against unrecorded interests in property if the purchaser gives value and completes the purchase in good faith. See Utah Code Ann. § 57-3-103. Utah's recording statute is applicable to beneficial interests created under trust deeds. See Bybee v. Stuart, 189 P.2d 118, 123 (Utah 1948) (interpreting bona fide purchaser provision to include beneficial interests under trust deeds); South Sanpitch Co. v. Pack, 765 P.2d 1279, 1281-82 (Utah Ct. App. 1988) (holding that bona fide purchaser provision within recording statute was applicable to beneficial interest under trust deed).

In this case, Jonezen argues that it was presented with a deed listing Dr. Powers as the record owner of the property and that it received no notice that the residence might be subject to a court order freezing Merrill Scott assets. In fact, Jonezen asserts that at the time it granted Dr. Powers the loan, there was no indication at all that the Receiver claimed an interest in the residence. As a result, Jonezen contends that Utah law shields it from any interest in the property claimed by the Receiver.

The Receiver responds that he was not required to record any notice of his interest in the property and that, since the bona fide purchaser statute is designed to protect people from unrecorded interests in property, that statute is not applicable in this case. The Receiver claims

that Jonezen made a loan on a "wild deed," which is outside of the protections afforded by the recording statute. The Receiver's reliance on the precedent involving wild deeds is misplaced.

Wild deeds are deeds that are executed by a stranger to the title, which should theoretically put the purchaser on inquiry notice that a title defect is a distinct possibility. See Salt Lake County v. Metro West Ready Mix, 2004 UT 23, ¶ 14, 16, 89 P.3d 155 ("We agree that the Tingeys' lack of record title put Metro West on notice of a defect in the Tingeys' title. . . . Because the Tingeys had no record title to the Property when they transferred it to Metro West, the conveyance was carried out through what is commonly referred to as a 'wild deed.'"); see also 11 Thompson on Real Property, Thomas Edition, § 92.11(c) (David A. Thomas ed., 1994) ("'[A] 'wild deed' [is one] executed by a grantor with no record ownership of the interest . . . ."). Although the parties debate whether Dr. Powers had the legal authority to transfer the title of the property to himself, his name was listed on a recorded deed. Accordingly, the deed upon which Jonezen relied cannot properly be considered a wild deed.

Regardless, Jonezen's argument is unavailing. If the Receiver is correct that Dr. Powers had no authority to make the transfer in question, the deed upon which Jonezen relied was void. The protections afforded to bona fide purchasers do not apply to deeds that are void. See First Interstate Bank v. First Wyoming Bank, 762 P.2d 379, 382 (Wyo. 1988) ("A bona fide purchaser is protected against infirmities in a deed which would render the deed voidable. 23 Am. Jur.2d Deeds § 188 (1983). . . . While a void deed cannot pass title even in favor of an innocent purchaser or a bona fide encumbrancer for value.") (further citation omitted).

> The distinction between void and voidable deeds arises only if the grantee has retransferred the land to a bona fide purchaser for value. If the defect is regarded as making the deed void, even a BFP will have no title, but if the deed is merely voidable the title will be unassailable in the hands of a BFP.

5

The Law of Property, Roger A. Cunningham, et. al. 720 (West 1984).

Here, the trust deed granted by Dr. Powers is the type considered "void." See Messenger v. Sundell-Guy, 1999 WL1253057 (D. Kan., Dec. 1, 1999) ("'Moreover, if the purchaser has no interest in the property, because of the invalidity of the deed, a subsequent purchaser from him or her is not entitled to protection as a bona fide purchaser. Legal interests of the vendor are protected as against the person claiming through the purchaser, under the general rule that a vendor can, as against persons having a superior legal interest, convey only such interest as he or she has.'" (quoting 77 Am.Jur.2d Vendor and Purchaser § 417)).

Dr. Powers's Authority to Transfer the Title

Jonezen's alternative argument is that Dr. Powers held valid title to the property at the time he granted Jonezen the Trust Deed. The parties plainly dispute the authority of Dr. Powers to transfer the title from Mira Vista to himself. But no party has clearly indicated the undisputed facts that support the respective legal conclusions that they advocate.

The core of Jonezen's argument is that Dr. Powers's financial interest in Mira Vista was so substantial that he was authorized to take actions on behalf of the corporation. This theory is premised on Dr. Powers's assertion of "economic membership" in Mira Vista flowing from his capital contributions to that entity. The factual record on this point is, to put it mildly, in considerable disarray. The parties' disagreement can perhaps best be summarized by stating that the Receiver contends that Dr. Powers is not entitled to the benefit of his contributions because his funds were mingled with other Merrill Scott funds before flowing to Mira Vista. Dr. Powers and Jonezen seemingly assert that (1) Mira Vista's assets can be traced back to Dr. Powers; (2) Dr. Powers is therefore properly considered the "owner" of Mira Vista; and (3) because Dr.

Powers was the owner of Mira Vista, he was empowered to transfer the title of the Salt Lake City residence from Mira Vista to himself.

Given the uncertain state of the factual record, summary judgment in favor of Jonezen is unwarranted. The Receiver's allegation that any contributions to Mira Vista provided by Dr. Powers are not fairly traceable to Dr. Powers by virtue of the commingling of those funds with other Merrill Scott assets presents a disputed material fact. Accordingly, Jonezen Enterprize's Cross-Motion for Summary Judgment is DENIED.

SO ORDERED this 29th day of August, 2006.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
United States District Judge